IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARQUETA WELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17-CV-258 |
| | ) | |
| DURHAM COUNTY, DURHAM COUNTY BOARD OF COUNTY COMISSIONERS, WENDELL DAVIS, in his individual and official capacity, and KATHY EVERETT-PERRY, in her individual and official capacity, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

　　Marqueta Welton was employed for over ten years by Durham County, first as the Director of Human Resources, then as Deputy County Manager, and finally as an Economic Development Officer. She alleges that after a new County Manager was hired, she was treated badly, demoted, and exposed to a work environment so hostile that she left her job. She asserts claims against the defendants under § 1983, Title VII, and North Carolina law. Except for her Title VII retaliation claim, the complaint fails to allege sufficient facts to support the asserted federal causes of action, and her state claims are barred by governmental and public official immunity. The Court will therefore grant the motions to dismiss as to all claims except the Title VII retaliation claim against Durham County.

I. **Facts Alleged in the Complaint**

In 2013, Ms. Welton and defendant Wendell Davis were both finalists for the position of Durham County Manager. Doc. 1 at ¶ 12. Mr. Davis asked Ms. Welton to withdraw her application. *Id.* at ¶ 13. Ultimately, Ms. Welton withdrew and continued to work for Durham County as one of two deputy managers. *See id.* at ¶¶ 8, 13, 81.

After Mr. Davis became the County Manager in April 2014, he treated Ms. Welton with hostility, cancelled meetings with her for no reason, and made unsubstantiated claims that she was not doing her job well. *Id.* at ¶¶ 14-20, 27-30. That summer, Mr. Davis suspended her for five days without pay. *Id.* at ¶ 20. After she filed several internal appeals, Mr. Davis rescinded the suspension but left in place a corrective action plan. *Id.* at ¶¶ 21-26.

On February 1, 2016, Mr. Davis hired Jodi Miller, a white woman, as the other deputy manager. *Id.* at ¶ 32. Soon after, he made Ms. Miller the Acting County Manager while he was out of town, even though Ms. Welton was more experienced. *Id.*

On February 25, 2016, Mr. Davis notified Ms. Welton that he intended to reorganize the county manager's office. *Id.* at ¶ 33. Instead of two deputy managers, there would be five general managers who were subject matter experts. *Id.* at ¶¶ 44-45. Ms. Welton would not be a general manager under this plan, but would be demoted to the new position of Economic Development Officer at significantly less pay. *See id.* at ¶ 37.

On March 10, 2016, Ms. Welton filed a grievance of her expected demotion and pay reduction, which Mr. Davis denied. *Id.* at ¶ 44-45. On April 1, 2016, Ms. Welton

filed a new grievance with human resources and the Durham County Board of County Commissioners. *Id.* at ¶ 58.

In April, Mr. Davis publicly announced and then implemented his reorganization plan for the county manager's office. *Id.* at ¶¶ 34, 40. Ms. Welton was demoted to Economic Development Officer effective April 25. *Id.* at ¶ 37. With the assistance of the Human Resources director, defendant Kathy Everett-Perry, Mr. Davis reduced Ms. Welton's salary almost fifty percent. *Id.* He also moved her office to another building and blocked her access to the county administration offices. *Id.* at ¶ 41. Her new building's primary functions included probation services and drug testing, which created circumstances not conducive to her economic development work. *Id.* at ¶¶ 41, 49. Ms. Welton had little assistance or guidance in her new position and she did not receive her June 2016 performance review or potential merit increase. *Id.* at ¶¶ 50-52.

Ms. Welton filed an Equal Employment Opportunity Commission ("EEOC") complaint alleging race, sex, and age discrimination and retaliation on July 14, 2016. Doc. 14-3; *see* Doc. 1. at ¶ 60. On September 1, 2016, Ms. Welton received a new project from her supervisor, general manager Jay Gibson. Doc. 1 at ¶¶ 48, 52. The project had short deadlines and required specialized engineering skills outside her expertise and job description. *Id.* at ¶¶ 52-56. After informing Mr. Gibson that she did not feel "comfortable taking the lead," Mr. Gibson replied that while "others can offer input," he expected her to "lead and manage" the project. *Id.* at ¶¶ 55-56. Ms. Welton developed stress and anxiety from these working conditions and took leave under the

Family Medical Leave Act at the end of September 2016. *Id.* at ¶ 57. She ultimately resigned. *Id.* at p. 2.

After receiving a right-to-sue letter from the EEOC, Ms. Welton sued Durham County, the Durham County Board of County Commissioners, Mr. Davis in his individual and official capacities, and Ms. Everett-Perry in her individual and official capacities. *See* Doc. 1 at ¶ 60. She asserts claims under § 1983, Title VII, and North Carolina law. The defendants move to dismiss all claims against them. Docs. 11, 13.[1]

## I. First Amendment Retaliation Claim

Ms. Welton asserts that the defendants retaliated against her for (1) "competing against Davis for the position of county manager," and (2) "for seeking redress of her grievances." Doc. 1 at ¶ 62. Neither of these qualifies as speech on "a matter of public concern." *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 351 (4th Cir. 2000) (citation omitted). Ms. Welton's application to be County Manager and her withdrawal from that application process constituted "a general course of conduct, not the expression of any idea or opinion" sufficient to state a claim of First Amendment retaliation. *Dennison v Cty. of Frederick*, 921 F.2d 50, 54 (4th Cir. 1990).[2] Likewise, "a public employee's expression of grievances concerning [her] own employment is not a

---

[1] Mr. Davis moves to dismiss all claims against him in his individual capacity. Doc. 11 (asserting Fed. R. Civ. P. 12(b)(1) and (6)). The remaining defendants, including Mr. Davis in his official capacity, likewise move to dismiss all claims against them. Doc. 13 (same).

[2] *Cf. Loftus v. Bobzien*, 848 F.3d 278, 285 (4th Cir. 2017) (noting the Fourth Circuit has not recognized a First Amendment right to hold elected office); *Carver v. Dennis*, 104 F.3d 847, 853 (6th Cir. 1997) (finding that while political belief, expression and affiliation, partisan political activity and expression of opinion may be protected under the First Amendment, there is no fundamental right to candidacy).

4

matter of public concern." *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990). The Court will dismiss Ms. Welton's First Amendment retaliation claim for failure to state a claim.

## II. § 1983 Claims: Fourteenth Amendment

### a. Liberty

Without public communication, negative statements about a plaintiff do not impair the due process liberty interest in her "good name, reputation, honor, or integrity." *Bishop v. Wood*, 426 U.S. 341, 348 (1976) (quotation omitted); *Sciolino v. City of Newport News*, 480 F.3d 642, 646-47 (4th Cir. 2007) (requiring stigmatizing statements to be "made public by the employer"). Ms. Welton asserts that the defendants "stigmatized [her] as incapable of handling the rigorous duties of a deputy county manager or county manager," Doc. 1 at ¶ 68, but she has not alleged any specific statements made by any defendant to that effect, nor has she alleged that any such stigmatizing reasons for her demotion were made public. Her complaint does not state a claim for deprivation of a liberty interest.

### b. Property

"Under North Carolina law, an employee has a protected 'property' interest in continued employment only if the employee can show a legitimate claim to continued employment under a contract, a state statute, or a local ordinance." *Peace v. Emp't Sec. Comm'n of N.C.*, 349 N.C. 315, 321, 507 S.E.2d 272, 277 (1998). Durham County ordinances establish that county employees are at-will employees and do not have "any property rights in employment." Durham Cty. Code of Ordinances § 18-84; *see Jenkins*

5

*v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir. 1990) (finding Virginia law precluded property interest in continued employment); *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 816 (M.D.N.C. 2005) (finding North Carolina law precludes the same).

Ms. Welton asserts that she had "an expectancy . . . of continuing employment" based on the compensation policy, personnel policies, and the County's disciplinary process. Doc. 1 at ¶¶ 74-75; *see e.g.*, *Perry v. Sindermann*, 408 U.S. 593, 602-03 (1972) (finding mutual understanding of continued employment creating a protectable property interest may be based on "rules and understandings, promulgated and fostered by state officials"). However, she has not alleged any facts tending to show or from which one could plausibly infer that these policies were incorporated into her employment contract or into state or local law. *See Pittman v. Wilson Cty.*, 839 F.2d 225, 229 (4th Cir. 1988) (finding at-will employee had no property interest in continued employment based on a personnel resolution that lacked the formal process for a county ordinance); *Johnson v. Pitt Cty. Bd. of Educ.*, No. 4:16-CV-214-D, 2017 WL 2304211, at *9, 13 (E.D.N.C. May 25, 2017) (dismissing claim because personnel manuals and policies were not part of plaintiff's employment contract and did not create a mutual understanding of continued employment). Ms. Welton's complaint does not state a claim for deprivation of a property interest.

### III. Title VII Claims

#### a. Claims Against Non-Employers

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her]

6

compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex[.]" 42 U.S.C. § 2000e-2(a)(1). Title VII authorizes claims against an employer, but not against non-employers or supervisors. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998); *Mann v. Winston Salem State Univ.*, No. 1:14CV1054, 2015 WL 5336146, at *5 (M.D.N.C. Sept. 14, 2015). Ms. Welton alleges that she was employed by Durham County. Doc. 1 at ¶¶ 81, 88. To the extent Ms. Welton seeks to assert Title VII claims against any other defendants, those claims must be dismissed.

### b. Statute of Limitations

Under Title VII, a timely charge must be filed with EEOC within 180 days of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1); *Howell v. N.C. Cent. Univ.*, No. 1:16CV576, 2017 WL 2861133, at *10-11 (M.D.N.C. July 5, 2017). Each allegedly unlawful practice must separately satisfy the 180-day test. *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Here, the plaintiff filed an EEOC charge on July 14, 2016. Doc. 14-3. Any claims of discrimination or retaliation that occurred before January 16, 2016, are time-barred and will be dismissed.

### c. Discrimination Claim

#### i. Race and Sex

A Title VII discrimination claim must be dismissed unless it "include[s] adequate factual allegations to support a claim that the [employer] discriminated against [the plaintiff] because she was African American or female." *McCleary-Evans v. Md. Dep't*

7

*of Transp.*, 780 F.3d 582, 583 (4th Cir. 2015) (emphasis omitted), *cert. denied*, 136 S. Ct. 1162 (2016). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010). Ms. Welton offers insufficient factual allegations to make her discrimination claims plausible.

She offers no facts tending to indicate directly that race or gender affected her demotion or other adverse employment action, nor does she allege facts from which one could reasonable infer such discrimination. *See Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (repeating well-established rule that at motion to dismiss stage, the court should draw all reasonable factual inferences from the alleged facts in the plaintiff's favor). She alleges no facts tending to indicate that race or gender affected hiring or salary decisions for her or any other employees. She does not state the age, gender, or race of the relevant decision-makers. Nor does she allege sufficient facts to indicate a prima facie claim is plausible. Ms. Welton alleges that Ms. Miller, the other deputy manager who did become a general manager, was "a white female with less experience," Doc. 1 at ¶ 83(d), but she does not mention the four other comparators hired as general managers, much less their race or gender.[3] While she alleges that she was qualified to be

---

[3] Indeed, the complaint is even silent as to Ms. Welton's race. *See* Doc. 1. As she does mention that some other employees were white, Doc. 1 at ¶¶ 19, 20, the Court assumes Ms. Welton is not white.

8

a general manager, *see id.* at ¶ 46, she is silent as to how her qualifications for any of the general manager positions compared to the persons actually hired.[4]

It is not enough to make conclusory allegations that employment action was taken based on race or gender. *See Martin*, 858 F.3d at 248; *Coleman*, 626 F.3d at 190-191. While a complaint does not have to set forth detailed facts to support every single element of a cause of action, it must allege some facts tending to plausibly support the claim. *See McKissick-Melton v. N.C. Cent. Univ.*, No. 1:16-CV-605, 2016 WL 6806234, at *2 (M.D.N.C. Nov. 17, 2016). Here, the complaint contains virtually no factual allegations tending to indicate that Ms. Welton and the new general managers were similarly situated or that race or gender was the reason for her demotion. Therefore, the Court will dismiss her claims of race and gender discrimination. *See McCleary-Evans*, 780 F.3d at 588.

### ii. Hostile Work Environment

In passing, Ms. Welton asserts that the County created a hostile work environment in violation of Title VII. Doc. 1 at ¶¶ 83(f), 88. To establish a claim of hostile work

---

[4] Ms. Welton does allege that "[s]imilarly situated individuals not of her race, gender or age were allowed to attend various conferences, while [she] was continually denied permission to attend" the National Association of Counties conference. Doc. 1 at ¶ 28. However, this conduct appears to have occurred in 2014 and 2015, *id.,* and is time-barred. In any event, refusal to allow an employee to attend a conference is not an adverse employment action sufficient to support a disparate treatment claim. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376-77 (4th Cir. 2004) (holding that exclusion from a conference that a similarly situated white male was permitted to attend did not affect terms of employment).

Ms. Welton also alleges that Ms. Miller was made Acting County Manager for a short time while the County Manager was out of the office. Doc. 1 at ¶ 32. However, she does not allege any financial or other consequences from the decision, nor has she provided any support for the view that this constituted an adverse employment action.

environment, a plaintiff must show that she experienced harassment that was (1) unwelcome; (2) based on her protected status; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) imputable to the employer. *See, e.g.*, *EEOC v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 327 (4th Cir. 2010). Ms. Welton includes no factual allegations in the complaint that any offensive touching occurred, that any offensive language was used in her presence, or that she was intimidated, ridiculed, or insulted, *see Boyer-Liberto v. Fontainebleau Corp*, 786 F.3d 264, 277 (4th Cir. 2015), nor has she alleged facts which plausibly support a claim that any harassment was based on her protected status of race or gender. *See supra* at 9. Therefore, this claim also fails. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

### iii. Age

Ms. Welton also asserts an age discrimination claim.[5] Doc. 1 at ¶ 84. However, she mentions age only in passing and does not identify her own age, the age of the individual defendants, or the age of any of the general managers. She has not alleged a prima facie case of discrimination based on age, *see Causey v. Balog*, 162 F.3d 795, 801-802 (4th Cir. 1998), or other facts tending to indicate that any employment decision was

---

[5] Ms. Welton mentions age discrimination in a section of her complaint asserting a claim under Title VII. Doc. 1 at ¶ 84. However, age discrimination claims arise under the Age Discrimination in Employment Act ("ADEA"), not Title VII. *See* 29 U.S.C. § 623; *see Zombro v. Balt. City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989) ("The conclusion is irresistible that the ADEA provides the exclusive judicial remedy for claims of age discrimination."). The Court construes her allegations as an attempt to state an ADEA claim.

based on her age. In the absence of facts giving rise to a plausible assertion of age discrimination, the Court will dismiss this claim.

### d. Retaliation

Title VII prohibits an employer from "retaliating against an employee for complaining about prior discrimination." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). A plaintiff may prove retaliation "either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of *McDonnell Douglas*." *Id.* To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, "a plaintiff must prove (1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." *Boyer-Liberto*, 786 F.3d at 281 (quotations omitted).

As to this third element, "Title VII retaliation claims must be proved according to traditional principles of but-for causation," meaning evidence "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer" is required. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). "Temporal proximity" between the protected activity and retaliatory act provides some evidence of causation. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).[6] If that is the only evidence of causation, then the temporal proximity must

---

[6]*See also Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017) (noting that in medical leave context under *McDonnell Douglas* framework, "close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation").

11

be "very close." *Id.*; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 650-51 (4th Cir. 2007) (finding other evidence of retaliatory conduct in seven months between discrimination complaint and firing was sufficient to prove causation); *King v. Rumsfeld*, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (finding period of ten weeks "weaken[ed] significantly the inference of causation," but that with other evidence, it was sufficient to establish a prima facie case).

Ms. Welton alleges that she participated in protected activity by filing an EEOC charge dated July 2016. *See* Doc. 14-3; Doc. 1 at ¶ 60. Drawing all inferences in her favor, she also engaged in protected activity by submitting a grievance asserting racial discrimination in March or April 2016.[7] *See* Doc. 1 at ¶ 83(e); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). Nothing in the complaint indicates that she engaged in protected activity before then.

Ms. Welton appears to assert that every action taken by Mr. Davis after his hiring in 2014 was retaliatory, including his announcement in February 2016 that she would not be one of the new general managers, but would be demoted. *See* Doc. 1 at p. 2, ¶¶ 33, 89. However, the announcement of her demotion and any actions in 2014 occurred before Ms. Welton submitted either the grievances or the EEOC complaint. Her protected

---

[7] In her complaint, she characterizes her grievance as a "grievance of racial discrimination." Doc. 1 at ¶ 83(e). She does not state anywhere else that she complained of discrimination in the grievance, and it is not clear from her complaint whether this was the alleged March grievance or the alleged April grievance. However, on a motion to dismiss for failure to state a claim, the Court is to draw all reasonable inferences in her favor. *Martin*, 858 F.3d at 248; *but see* Doc. 18-1 (document submitted by the plaintiff with briefing which appears to be the April 1, 2016, grievance submitted to Ms. Everett-Perry asserting age, gender, and race discrimination).

activities in March or April and July could not have caused adverse actions in February. *See Morrall v. Gates*, 370 F. App'x 396, 398 n. 2 (4th Cir. 2010).

Ms. Welton also alleges that several retaliatory actions occurred shortly after her protected activities. Her office was relocated to unsatisfactory space and she was isolated from the county administration in the weeks following her April grievance, and she did not receive her June performance review. *See* Doc. 1 at ¶¶ 41, 51. Likewise, within seven weeks of her EEOC complaint,[8] her superiors gave her primary responsibility for a project requiring engineering skills that she did not have, refused to provide her with meaningful assistance or support, and set her up to fail in her new position as Economic Development Officer. Doc. 1 at ¶¶ 52-56, 87.

These allegedly retaliatory actions are sufficiently close in time to Ms. Welton's protected activity to plausibly allege causation. *See O'Neal v. Harrison*, No. 5:14-CV-198-FL, 2015 WL 1084321, at *8 (E.D.N.C. Mar. 11, 2015) (finding plaintiff stated a claim when "approximately six weeks elapsed between the protected activity . . . and the last retaliatory action"); *Westmoreland v. Prince George's Cty.*, No. TDC-14-0821, 2015 WL 996752, at *16 (D. Md. Mar. 4, 2015) (finding plaintiff stated a claim when "just over one month" passed between her complaint and removal). The Court will deny the motion to dismiss this claim as against Durham County.

---

[8] Ms. Welton has not alleged that any of the decision-makers knew about the EEOC complaint. Construing the complaint liberally, at this stage of the litigation that is a plausible inference from the other allegations of the complaint.

## IV. State Law Claims[9]

The state law claims against Mr. Davis and Ms. Everett-Perry in their individual capacities must be dismissed because North Carolina law entitles them to public official immunity. *See Evans v. Chalmers*, 703 F.3d 636, 656–57 (4th Cir. 2012); *Paschal v. Myers*, 129 N.C. App. 23, 30, 497 S.E.2d 311, 316 (1998). Ms. Welton has not alleged any facts to "pierce the cloak of official immunity," such as actions by Mr. Davis or Ms. Everett-Perry that were "malicious, corrupt or outside of the scope of official duties." *Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996). Absent clear allegations to the contrary, "it will always be presumed that public officials will discharge their duties in good faith[.]" *Leete v. Cty. of Warren,* 341 N.C. 116, 119, 462 S.E.2d 476, 478 (1995) (quotation omitted).

Ms. Welton's state law tort claims against Durham County, the Board, and Mr. Davis and Ms. Everett-Perry in their official capacities are barred by governmental immunity. Local government entities are immune from claims "for torts committed by officers or employees while performing a governmental function." *Reid v. Town of Madison*, 137 N.C. App. 168, 170, 527 S.E.2d 87, 89 (2000); *see also Estate of Williams ex rel. Overton v. Pasquotank Cty. Parks & Rec. Dep't*, 366 N.C. 195, 198, 732 S.E.2d 137, 140 (2012). "[I]n a suit against a public employee in his official capacity, the law entitles the employee to the same protection as that of the entity." *Reid*, 137 N.C. App. at

---

[9] Ms. Welton alleged claims of fraud and breach of fiduciary duty, defamation, and infliction of emotional distress against the defendants. Doc. 1 at ¶¶ 92-108. In the alternative, the Court concludes that she has failed to state a claim on which relief may be granted.

171, 527 S.E.2d at 89. Ms. Welton has alleged no facts to plausibly support a claim that Durham County has waived its governmental immunity.

## V. Conclusion

Ms. Welton has not alleged any speech on her part which would give rise to a First Amendment retaliation claim. Her claims of discrimination based on race, gender, and age are conclusory, as are her due process claims. Her state law claims are barred by public official and governmental immunity. Therefore, the Court will grant the defendants' motions to dismiss in substantial part.

Drawing all reasonable factual inferences from the specific facts alleged, Ms. Welton's complaint asserts that her employer, Durham County, took several specific negative actions against her soon after she complained of racial discrimination in March or April 2016 and again after she filed an EEOC charge in July 2016. Consequently, the Court will deny the motion as to her Title VII retaliation claim against Durham County.

It is **ORDERED** that:

1. The motion to dismiss filed by defendant Wendell Davis in his individual capacity, Doc. 11, is **GRANTED**.

2. The motion to dismiss filed by the remaining defendants and Mr. Davis in his official capacity, Doc. 13, is **GRANTED in part and DENIED in part** as follows:

   a. The motion is **DENIED** as to the Title VII retaliation claim against Durham County;

   b. The motion is otherwise **GRANTED.**

15

c. All claims against the individual defendants and the Board of County Commissioners are **DISMISSED.**

d. All claims against Durham County are **DISMISSED except for the Title VII retaliation claim, which may proceed.**

This the 28th day of August, 2017.

_____
UNITED STATES DISTRICT JUDGE